IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE MERRITT | ) | CASE NO. |
| 5751 Franklin Church Road | ) | |
| Greenwich, Ohio 44837 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| GB MANUFACTURING COMPANY | ) | |
| 60 Scott Street | ) | **JURY DEMAND ENDORSED** |
| Shiloh, Ohio 44878 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| GB Manufacturing Company | ) | |
| c/o Annette Y. Petree | ) | |
| P.O. Box 8 | ) | |
| Delta, Ohio 43515 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Dale Merritt, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES

1. Merritt is a resident of the city of Greenwich, county of Huron, state of Ohio.

2. GB Manufacturing is a foreign corporation that operated a business located at 60 Scott Street, Shiloh, Ohio 44878.

3. GB Manufacturing was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 621 *et seq*.

4. GB Manufacturing was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

## JURISDICTION & VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Merritt is alleging a Federal Law Claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

6. All material events alleged in this Complaint occurred in Richland County.

7. This Court has supplemental jurisdiction over Merritt's state law claims pursuant to 28 U.S.C. § 1367 as Merritt's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Merritt filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01068 against GB Manufacturing.

10. On August 5, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Merritt regarding the Charge of Discrimination.

11. Merritt received his Right to Sue letter from the EEOC which has been attached hereto as Plaintiff's Exhibit A.

12. Merritt has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Merritt has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Merritt is a former employee of GB Manufacturing.

15. Merritt began working for GB Manufacturing on or around February 11, 2016.

16. GB Manufacturing employed Merritt as a Press Operator.

17. Merritt had a strong history of performance with GB Manufacturing.

18. Merritt consistently received pay raises.

19. Merritt did not have any history of meaningful discipline.

20. Frank Schaffer was Merritt's immediate supervisor.

21. During all material events asserted herein, F. Schaffer has and/or had authority to hire, fire, and/or discipline employees.

22. F. Schaffer did not participate in the decision to hire Merritt.

23. In June 2020, Merritt's coworker, David Schaffer, operated a grinder without wearing safety glasses.

24. Defendant required all employees to wear safety glasses when operating the grinder.

25. Employee bonuses were tied to the level of worker injuries.

26. Merritt complained to F. Schaffer, Ray Oney, Jeff Owens, and HR about the unsafe working conditions stemming from his D. Schaffer's failure to wear safety glasses while operating the grinder.

27. Merrit's complained that F. Schaffer failed to wear safety glasses while operating the grinder created an unsafe working environment.

28. Defendant's failure to ensure a safe work environment is a violation of R.C. § 4101.11.

29. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

30. Defendant's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

31. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

32. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

33. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

34. Defendant's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

35. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

36. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D.

Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

37. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

38. The Tenth District Court of Appeals in *Blackburn*, 22 N.E.3d 1149, at 1158 further held "There is a statewide policy prohibiting termination of employees who report conduct and practices in a dental practice that present a risk of severe harm to patients or staff."

39. The Tenth District Court of Appeals in *Blackburn*, 22 N.E. 3d 1149, at 1158 held that a "dental office" is a "place of employment."

40. Defendant operates a place of employment.

41. As Defendant operates a place of employment, Ohio has a public policy protecting employees of Defendant who report conduct and practices that present a risk of severe harm to staff.

42. Despite these concerns, Defendant did not make any changes.

43. Defendant jeopardized Ohio's public policy ensuring a safe workplace in failing to take any action to ensure a safe workplace following Merritt's complaints.

44. Upon information and belief, Defendant has a policy requiring investigations following receipt of a complaint of unsafe working conditions.

45. An investigation should include interviewing the complainant.

46. An investigation should include interviewing the subject of the complaint.

47. An investigation should include interviewing the subject of the reported incident.

48. An investigation should include interviewing witnesses to the reported incident.

5

49. An investigation should include getting a written statement from the complainant.

50. An investigation should include getting a written statement from the subject of the complaint.

51. An investigation should include getting a written statement from the subject of the reported incident.

52. In response to Merritt's complaint of unsafe working conditions, HR did not interview F. Schaffer.

53. In response to Merritt's complaint of unsafe working conditions, HR did not get a written statement from Merritt.

54. In response to Merritt's complaint of unsafe working conditions, HR did not get a written statement from F. Schaffer.

55. In response to Merritt's complaint of unsafe working conditions, HR did not take corrective action against F. Schaffer.

56. HR ratified F. Schaffer's unsafe conduct in failing to conduct an investigation into Merritt's unsafe working conditions complaint.

57. HR ratified F. Schaffer's unsafe conduct in failing to discipline F. Schaffer following Merritt's unsafe working conditions complaint.

58. D. Schaffer continued to operate the grinder despite Merritt's complaints.

59. D. Schaffer is significantly younger than Merritt.

60. F. Schaffer actively ran interference between Merritt's reports and D. Schaffer's multiple reports of safety violations.

61. By July 2020, Merritt believed that Defendant was never going to take his complaints seriously but made one last attempt.

62. The HR Manager visited the Shiloh plant and asked to speak to Merritt.

63. Upon meeting Merritt, the HR Manager told him "now I get to meet the troublemakers."

64. The HR Manager saw Merritt as the problem because of his complaints.

65. On August 24, 2020, Defendant terminated Merritt's employment.

66. Merritt was 52 years old at the time Defendant terminated his employment.

67. Defendant terminated Merritt's employment because of his age.

68. Defendant terminated Merritt's employment in retaliation for his numerous safety complaints.

69. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

70. Defendant has used the Progressive Discipline Policy when disciplining younger employees.

71. Defendant has used the Progressive Discipline Policy when disciplining employees who have not complained of unsafe working conditions.

72. Under the Progressive Discipline Policy, Merritt had not received any meaningful discipline.

73. Under the Progressive Discipline Policy, Merritt had not received any written warnings.

74. Under the Progressive Discipline Policy, Merritt had not been suspended.

75. Defendant skipped steps under the Progressive Discipline Policy when they terminated Merritt's employment.

76. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

77. Skipping steps under the Progressive Discipline Policy is an adverse action.

78. Defendant intentionally skipped steps under the Progressive Discipline Policy when they terminated Merritt's employment.

79. Defendant willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Merritt's employment.

80. Terminating Merritt's employment was an adverse employment action.

81. Terminating Merritt's employment was an adverse action.

82. Defendant intentionally terminated Merritt's employment.

83. Defendant willfully made the decision to terminate Merritt's employment.

84. Defendant terminated Merritt's employment in violation of the Progressive Discipline Policy because of his age.

85. Defendant terminated Merritt's employment in violation of the Progressive Discipline Policy in retaliation for lodging safety complaints.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 621 *et seq.*

86. Merritt restates each and every prior paragraph of this complaint, as if it were fully restated herein.

87. Merritt was 52 at the time of his termination.

88. At all times relevant, Merritt was a member of a statutorily-protected class under 29 U.S.C. § 621 *et seq*.

89. Defendant treated Merritt differently from other similarly situated employees based on his age.

90. As of August 24, 2020, Merritt was fully qualified for his position and employment with Defendant.

91. Merritt, at age 52, was a member of a statutorily-protected class under 29 U.S.C. § 621 *et seq*. at the time he was terminated from his employment with Defendant.

92. Merritt was terminated from his employment on or around August 24, 2020.

93. After terminating Merritt, the Defendant replaced Merritt with a person who was significantly younger and/or not belonging to the protected class under 29 U.S.C. § 621 *et seq*.

94. Defendant violated 29 U.S.C. § 621 *et seq.* by discriminating against Merritt based on his age.

95. Merritt suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 29 U.S.C. § 621 *et seq*.

96. As a direct and proximate result of the Defendant's conduct, Merritt suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

97. Merritt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

99. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

100. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."(*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

101. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

9

102. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

103. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

104. During his employment, Merritt made complaints regarding unsafe working conditions.

105. Defendant failed to investigate Merritt's safety complaints.

106. Defendant failed to take remedial action following Merritt's safety complaints.

107. Subsequent to Merritt's safety complaints, Defendant terminated his employment.

108. Defendant's termination of Merritt jeopardizes these public policies.

109. Defendant's termination of Merritt was motivated by conduct related to these public policies.

110. Defendant had no overriding business justification for terminating Merritt.

111. As a direct and proximate result of Defendant's conduct, Merritt has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Merritt demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Merritt to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Merritt for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Merritt's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Fred.Bean@spitzlawfirm.com
            Taurean.Shattuck@spitzlawfirm.com
            David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Dale Merritt demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Taurean J. Shattuck*
>Fred M. Bean (0086756)
>Taurean J. Shattuck (0097364)
>David Byrnes (0086975)
>**THE SPITZ LAW FIRM, LLC**