UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

_____

|  |  |  |
|---|---|---|
| DALE MERRITT, | : | Case No. 21-cv-01978 |
|  | : |  |
| Plaintiff, | : |  |
|  | : | OPINION & ORDER |
| v. | : | [Resolving Doc. 15] |
|  | : |  |
| GB MANUFACTURING | : |  |
| COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |

_____

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this employment case, Defendant GB Manufacturing Company moves for summary judgment on Plaintiff Dale Merritt's federal age discrimination and Ohio wrongful-discharge-public-policy claims.

GB Manufacturing says it fired Plaintiff because Plaintiff joined other employees to prank a co-worker who repeatedly did not wear safety glasses.  Plaintiff admits that he had complained to supervisors about the co-worker disregarding safety requirements but denies that he was involved in the prank.

For the following reasons, the Court **DENIES** Defendant's motion.

I.    Background

A. Plaintiff's Long Employment History with Defendant

Defendant operates a manufacturing company with two Ohio facilities.[1]  Plaintiff Merritt worked for Defendant for more than 20-years with some interludes.[2]  From 2016

---

[1] Doc. 15-2 at PageID# 140.
[2] *Id.* at PageID# 140–41.

Case No. 21-cv-01978
GWIN, J.

until GB Manufacturing fired Plaintiff in 2020, Plaintiff was a "Break Press Operator."[3]

Because that work involves grinding, Defendant requires its employees to wear safety

glasses.[4]

     Other than the circumstances involving Plaintiff's termination, Defendant gave

Plaintiff only one low-level disciplinary infraction between 2016 and 2020.[5]

### B.  Plaintiff's Safety Glasses Complaints Against David Shafer

     Before Plaintiff's employment was terminated, Plaintiff complained to Human

Resources employee Linda Buckner on two occasions that a coworker named David Shafer

was violating Defendant's safety glasses rules.[6]  In the first complaint, Plaintiff said that

David Shafer was walking around the plant without his safety glasses.[7]  The second time,

Plaintiff said that David Shafer was grinding without his glasses.[8]

     Plaintiff also voiced complaints with a HR employee named Rachel,[9] and

supervisors Frank Shafer[10] and Ray Oney.[11]  Plaintiff said that Rachel visited the plant and

told Plaintiff that he was a "troublemaker" for lodging the safety complaint.[12]

     Co-employee David Shafer had failed to comply with the GB Manufacturing's safety

glass requirement.  The Defendant disciplined David Shafer for safety glasses infractions on

May 22, 2019[13] and September 1, 2020[14] (about one week after Plaintiff's employment was

---

[3] *Id.* at PageID# 142.
[4] Doc. 17 at 30.
[5] *Id.* at 27.
[6] *Id.* at 36.
[7] *Id.* at 37.
[8] *Id.*
[9] *Id.* at 89.
[10] *Id.* at 50.
[11] *Id.*
[12] *Id.* at 94.
[13] Doc. 15-2 at PageID# 165 ("David has been told several times by HR to wear his safety glasses.").
[14] *Id.* at PageID# 166.

- 2 -

Case No. 21-cv-01978
GWIN, J.

terminated).  Shafer also received verbal reprimands related to his failing to use safety glasses.[15]

Plaintiff says that he and David Shafer were friends and did not have disputes, apart from the safety glasses issue.[16]  Defendant contends Plaintiff and co-employee Shafer had "continuing disputes."[17]

### C.  The T-Shirt Tube Incident

On August 17, 2020, a tube containing a t-shirt, sunglasses, a pen, and a handwritten note were found at David Shafer's workstation.[18]  A picture of safety glasses was on the front of the t-shirt;[19] the words "SPECIAL KIND OF STUPID" were printed on the back of the shirt.[20]  The note read:

> 1. A t-shirt that describes you
> 2. A pair of safety glasses so you can get the ones off your head
> 3. A pen to write yourself up when your glasses are on your head
>
>     - from your worst nightmare[21]

### D.  Defendant's Investigation and Termination of Plaintiff's Employment

HR Generalist Linda Ahlefeld and Chief Operating Officer Clint Wall investigated the incident.[22]  Ahlefeld says that Plaintiff Merritt was interviewed because he had "continuing disputes with David Shafer on a variety of issues."[23]  Another employee, Andrew Oney, was interviewed because Oney reported to David Shafer.[24]  Oney is

---

[15] *Id.* at PageID# 144.
[16] Doc. 17 at 32–33.
[17] Doc. 15-2 at PageID# 142.
[18] *Id.*
[19] *Id.* at PageID# 150
[20] *Id.* at PageID# 151.
[21] *Id.* at PageID# 153.
[22] *Id.* at PageID# 142.
[23] *Id.*
[24] *Id.*

Case No. 21-cv-01978
GWIN, J.

"significantly under the age of 40."[25]  The employment file also contains a written

statement from employee Tim Shepherd.[26]

### i.    August 17 Interviews

On August 17, 2020, HR interviewed Plaintiff and Oney.[27]  Oney "denied knowing

anything about the [t-shirt tube incident]" but admitted to making "the inappropriate

shirt."[28]  Plaintiff Merritt "denied knowing anything or even being a part of what was

thought as a prank," according to Defendant's termination report.[29]

### ii.    The Three Other T-Shirts

Early in Defendant's investigation, Defendant learned that three other identical shirts

had been made.[30]  On those shirts, the words "F*CK OFF GANG" with a middle finger in

replace of the letter "U" were printed on one side;[31] a crosshairs target was printed on the

other side.[32]

### iii.    The Local T-Shirt Store

After Plaintiff and Oney denied involvement in the t-shirt tube incident, HR

employee Linda Ahlefeld contacted a local t-shirt store.[33]  Ahlefeld learned that Oney

"ordered 4 shirts and picked all 4 shirts up."[34]

### iv.    Oney's Suspension and August 24 Written Statement

---

[25] *Id.* at PageID# 141.
[26] *Id* at PageID# 160.  The parties provide different spellings of Tim Shepherd's last name.  The Court uses the spelling "Shepherd."
[27] *Id.* at PageID# 143; *see also id.* at PageID# 162 (Oney); *id.* at PageID# 163 (Merritt).
[28] *Id.* at PageID# 162.
[29] *Id.* at PageID# 163.
[30] *Id.* at PageID# 142.
[31] *Id.* at PageID# 156.
[32] *Id.* at PageID# 155.
[33] *Id.* at PageID# 143.
[34] *Id.* at PageID# 162.

Case No. 21-cv-01978
GWIN, J.

Oney was suspended for three days, from August 18 to August 20.[35]  After being

confronted with the information that Defendant had learned that he picked up the t-shirts,[36]

Oney produced a written statement dated August 24.[37]   Oney said that he ordered the

"F*CK OFF GANG" shirt and that both Plaintiff and Tim Shepherd wanted those shirts.[38]

Oney also claimed that Plaintiff and co-employee Tim Shepherd "suggested" [sic] the shirt

that David Shafer received.[39]  Oney concluded that he "believed [Plaintiff] got the bag with

the other shirt[—]the one for David [Shafer] with glasses."[40]

### v.   Tim Shepherd's August 24 Written Statement

In a written statement also dated August 24, Tim Shepherd wrote that he "knew

something about the three alike shirts" but that he "didn't know anything about the shirt

with glasses."[41]  He continued that he "heard rumors [sic] about tube [sic] but didn't see it.

Heard rumors [sic] from Dale and someone else[.]  [D]on't know who [be]cause I was

Brake Pressing."[42]

After the investigation, Defendant did not terminate Tim Shepherd's employment.[43]

### vi.   Plaintiff's August 24 Employment Termination

Also on August 24, Defendant terminated Plaintiff Merritt's employment.[44]  In a

report, Defendant wrote:

---

[35] *Id.*
[36] *Id.*
[37] Doc. 18-3.
[38] *Id.*  He also said that "it picked them up from the shirt store," but this part of the note is hard to understand since it is unclear to whom the word "it" refers.  *Id.*
[39] *Id.*
[40] *Id.*  In Oney's employee separation report, it says that: "[Oney]was brought back in on 8/24/2020 where he wrote a statement that it was all [Plaintiff's] idea for the shirt for David [Shafer]."  Doc. 15-2 at PageID# 162.  But Oney's August 24 statement, as discussed above, does not so directly place blame on Plaintiff for coming up with the idea for the shirt.
[41] *Id.* at PageID# 160.
[42] *Id.*
[43] Doc. 18-4 at 2.
[44] Doc. 15-2 at PageID# 163.

Case No. 21-cv-01978
GWIN, J.

> [I]t was discovered that Dale came up with the idea to get a
> shirt made for David Shafer (Supervisor) that stated, "Special
> Kind of Stupid," along with leaving a note inside the tubular
> package addressed to David that had also included safety
> glasses, and ink pen, and note.
>
> Dale's actions and lack of telling the truth is a direct violation
> of our Progressive Disciplinary Policy.
>
> Your harassment/prank was unwelcomed conduct by being
> demeaning, crude language, and indirect gestures.  Your
> conduct was subjective abusive towards the supervisor while
> trying to humiliate him in front of his team and peers.
>
> As a result of your actions, effective immediately your
> employment with GB Fabrication has been terminated.[45]

At the time of his firing, Plaintiff Merritt was 52 years old.[46]

### vii.    Oney's August 26 Statement

In a statement dated August 26, Oney wrote that he had earlier called a HR
employee because his "conscience [sic] was eating at [him]."[47]  He said that both he and
Plaintiff were involved in the t-shirt incident.[48]  And he added that: "Tim [Shepherd] [knew]
about the shirt but [didn't] know that [they] were going to do it."[49]

On August 26, Defendant terminated Oney's employment for his involvement in
the t-shirt tube incident and his earlier untruthful statements.[50]

### E.  Plaintiff Merritt's Replacement

Travis Shepherd—the then-42-year-old younger brother of Tim Shepherd—replaced
Plaintiff Merritt's position with Defendant.[51]

---

[45] *Id.*
[46] Doc. 17 at 66.
[47] Doc. 15-2 at PageID# 158.
[48] *Id.*
[49] *Id.*
[50] *Id.* at PageID# 162.
[51] Doc. 18-4.

Case No. 21-cv-01978
GWIN, J.

### F.  Plaintiff Merritt's Testimony

In his deposition, Plaintiff Merritt denied all involvement in the t-shirt tube incident[52] and other t-shirts.[53]  Plaintiff also submitted a declaration saying that, during the investigation, he "unequivocally denied" being involved in the t-shirt tube incident and that he again raised his safety complaints regarding David Shafer.[54]

Plaintiff also says that a Defendant plant manager told him that he was "getting a little old for [his] work," but that he took this comment as a joke.[55]  He said that there were no derogatory comments made about his age during his employment term.[56]

## II.  Summary Judgment Standard

A court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[57]  There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[58]

## III.  Discussion

### A.  Age Discrimination

Plaintiff Merritt brings a claim under the Age Discrimination in Employment Act ("ADEA"), a federal statute that prevents employers from terminating an employee "because of such individual's age."[59]  Here, the *McDonnell Douglas* burden-shifting framework applies as Plaintiff raises only a circumstantial-evidence-supported claim.

---

[52] Doc. 17 at 54.
[53] *Id.* at 56.
[54] Doc. 18-4 at 1.
[55] Doc. 17 at 34.
[56] *Id.*
[57] Fed. R. Civ. P. 56(a).
[58] *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[59] 29 U.S.C. § 623(a)(1).

Case No. 21-cv-01978
GWIN, J.

In a recent decision, a Sixth Circuit court succinctly summarized how courts apply

*McDonnell Douglas* in ADEA cases:

> *McDonnell Douglas* first requires the plaintiff to establish a prima facie case
> of discrimination.  If she can, the burden shifts to the defendant, who must
> produce legitimate, nondiscriminatory reasons for the adverse employment
> action.  And if the employer can produce those reasons, the burden shifts
> back to the plaintiff to establish that the proffered reasons are simply pretext
> for age discrimination.  If the plaintiff satisfies this third step, the factfinder
> may reasonably infer discrimination.[60]

Below, the Court finds that Plaintiff makes out a prima facie case and has satisfied

his burden to survive summary judgment.  A plaintiff "need only prove 'enough to create a

*genuine issue* as to whether [Defendant's] rationale is pretextual.'"[61]

### i.  Plaintiff's Prima Facie Case

A plaintiff makes out a prima facie case when he shows: "1) that he was a member

of a protected class; 2) that he was discharged; 3) that he was qualified for the position

held; and 4) that he was replaced by someone outside of the protected class."[62]

Here, Plaintiff meets all four elements.  Plaintiff was 52 when Defendant terminated

his employment.  He was a longtime employee and Defendant does not contest that he

was qualified.  And, he was replaced by Travis Shepherd, who was then 42-years old.[63]

This satisfies the fourth factor as, under Sixth Circuit law, an "[a]ge difference[] of ten or

more years [has] generally been held to be sufficiently substantial to meet the requirement

---

[60] *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020) (citations omitted).
[61] *Rafee v. Volvo Grp. N. Am., LLC*, No. 21-5891, 2022 WL 1837834, at *3 (6th Cir. June 3, 2022) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 260 (6th Cir. 2011)).
[62] *Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir.2009)).  For the fourth prong, courts sometimes use the formulation that a person was: "treated differently from similarly-situated individuals."  *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).  But as the Sixth Circuit has said made clear, the fourth prong is satisfied if *either* a younger person replaces plaintiff *or* plaintiff is treated differently from other similarly situated employees.  *Id; Johnson v. University of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir. 2000).
[63] Doc. 18-4.

Case No. 21-cv-01978
GWIN, J.

of the fourth part of [an] age discrimination prima facie case."[64]

Defendant offers no response to the Travis Shepherd evidence—and in fact, makes no mention of Travis Shepherd in its briefs.

Defendant only argues that Plaintiff's claim fails because Oney—who is younger than Plaintiff—was fired shortly after Plaintiff's employment termination.  But, Defendant ignores the precedent allowing a plaintiff to make a prima facie case by *either* showing that he was treated less favorably than a similarly situated employee *or* that he was replaced by a younger person.[65]  The cases Defendant cites where plaintiffs failed to meet the fourth prong all involve instances where plaintiffs were not replaced by a person ten years younger.[66]

### ii.  Defendant's Justification

Because Defendant makes out a prima facie case, the burden shifts to Defendants to offer legitimate, non-discriminatory reasons for the employment termination.

Defendant argues that Plaintiff was responsible for "the package that was delivered to David Shafer [that] included a threatening note and a highly inappropriate t-shirt."[67]  In support, Defendant adds that Plaintiff admits that it was appropriate for Defendant to dismiss Oney for Oney's role in the t-shirt tube incident.[68]

### iii.  Pretext Analysis[69]

---

[64] *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

[65] *See supra* n.62.

[66] Defendant's opening brief, Doc. 15 at 7–8, cited the following cases, none of which involve a plaintiff who was replaced by a person 10 years younger than the plaintiff:  *Vasser v. SaarGummi Tennessee, LLC*, No. 18-cv-83, 2019 WL 8013869, at *10 (M.D. Tenn. Dec. 2, 2019) (no allegation that plaintiff was replaced by younger person); *Bigelow v. ANR Pipeline Co.*, 121 F.3d 707 (6th Cir. 1997) (prima facie case met); *Graves v. Starbucks Coffee Co.*, No. 15-cv-431, 2016 WL 4429966, at *8 (S.D. Ohio Aug. 22, 2016) (plaintiff replaced by person less than 10 years younger than plaintiff).

[67] Doc. 15 at 8.

[68] *Id.*

[69] Plaintiff's complaint only brings an age discrimination claim under federal law.  Doc. 1 at 8–9.  Accordingly, Plaintiff's citations to cases involving Ohio age discrimination law, Doc. 18 at 13 n.69, are not on point.

Case No. 21-cv-01978
GWIN, J.

Plaintiff argues that Defendant's termination was pretextual because it had no basis in fact.[70] In response, Defendant points to a line of cases holding that an employer who honestly believes in its justification for terminating employment can prevail on summary judgement.

The Sixth Circuit "'honest belief' rule"[71] establishes that "as long as the employer honestly believed the reason it gave for its employment action, an employee is not able to establish pretext even if the employer's reason is ultimately found to be mistaken."[72] In making that determination, the "key inquiry . . . is whether the employer made a reasonably informed and considered decision before taking' the complained-of action. [ . . . ]. The employer certainly must point to particularized facts upon which it reasonably relied."[73] Still, the employer's decision gets deference: "the decisional process used by the employer [need not] be optimal [ . . . ]."[74]

Defendant says the honest-belief rule applies on the grounds that: Plaintiff admitted that it was appropriate to interview him; Oney and Tim Shepherd "identified Plaintiff as being involved in the misconduct;" Oney and Shepherd had no reason to lie; and Plaintiff "admits that he has no logic for how his discharge was based on his age."[75]

Defendant's argument does not hold up. When Plaintiff was fired on August 24, there was no reliable evidence linking Plaintiff to the t-shirt incident. Oney's August 24 statement—which Oney later allegedly retracted as untrue—suggests in a non-definitive

---

[70] The "no basis in fact" formulation is, generally, one of three ways Plaintiff can prove that a Defendant's step-two justification is pretextual. *See, e.g., Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).
[71] *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).
[72] *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016).
[73] *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012).
[74] *Id.*
[75] Doc. 15 at 9.

Case No. 21-cv-01978
GWIN, J.

manner that Plaintiff had a role in the shirt delivered to David Shafer.[76]  But, when Oney

made that statement, Defendant's own investigation had already determined that "Mr.

Oney purchased the t-shirts."[77]  So, to the extent that Oney's statement exclusively blamed

Plaintiff, Defendant already knew that Oney was not being truthful.  And, despite

Defendant's contention to the contrary, there was obvious reason to doubt Oney's account

directing blame away from himself since he was uniquely implicated in the investigation.

On Defendant's evidence, Oney was the most culpable actor: He picked up the

shirts and ultimately admitted to being involved in the incident.  No similar set of facts

exists for Plaintiff Merritt: Plaintiff denied being involved and the only other evidence is

Oney's questionable accusation.  But, the fact that Plaintiff was fired *two days before*

Defendant fired Oney and *before* the investigation was fully completed undercuts

Defendant's claim that the t-shirt incident was the true case of the termination.

Additionally, Defendant's decision not to fire Tim Shepard weakens Defendant's

position with respect to its justification for terminating Plaintiff's employment.  Like

Plaintiff, Tim Shepard is implicated in both Oney's August 24 and 26 statements.  Tim

Shepard's own statement also evinces some awareness of the prank.  And also like Plaintiff,

Tim Shepard denied being involved.  But despite these similarities, Plaintiff's employment

was terminated, and Tim Shepard's employment was not.

Conducting an internal investigation does mean the honest-belief rule applies.[78]

"Although courts should resist attempting to micro-manage the process used by employers

in making their employment decisions, neither should they blindly assume that an

---

[76] Doc. 18-3.
[77] Doc. 15-2 at PageID# 143.
[78] *Cf. Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 961 (6th Cir. 2014).

Case No. 21-cv-01978
GWIN, J.

employer's description of its reasons is honest."[79]  And the Sixth Circuit has instructed that:

"Courts should be cautious in granting, and affirming, summary judgment on discrimination claims when the plaintiff has made a prima facie case and a showing of pretext because 'an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.'"[80]

Here, Defendant's short summary judgment brief does not point to facts allowing the Court to find that the investigation turned up the necessary particularized findings. Plaintiff denies being involved in the t-shirt incident and Defendant has presented no reliable, hard evidence linking him to it.  Even though Oney was the more culpable actor on the record here, Plaintiff was fired two days before Oney.  And Tim Shepard was not fired, despite being similarly linked to the incident.  These observations together support the Court's conclusion that Plaintiff has sufficiently shown that there was no basis in fact for Plaintiff's termination.

### B.  Wrongful Termination

Under Ohio law, there is "an exception to the traditional common-law doctrine of employment-at-will where a discharge is in violation of a statute and thereby contravenes public policy."[81]  Plaintiff here alleges that he was wrongfully discharged in response to his safety glasses complaints in violation of the workplace safety public policy embodied in Ohio Rev. Code §§ 4101.11 & 4101.12.[82]

---

[79] *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).
[80] *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004).
[81] *Pytlinski v. Brocar Prod., Inc.*, 760 N.E.2d 385, 387 (Ohio 2002).  Following this *Court's Erie Railroad Co. v. Tompkins* requirement, the Court applies what it believes the Ohio Supreme Court would rule.
[82] Doc. 18 at 6.

Case No. 21-cv-01978
GWIN, J.

To succeed on the wrongful-termination-in-violation-of-public-policy claim,

[A] plaintiff must establish four elements: (1) that a clear public policy existed
and was manifested either in a state or federal constitution, statute or
administrative regulation or in the common law ("the clarity element"), (2)
that dismissing employees under circumstances like those involved in the
plaintiff's dismissal would jeopardize the public policy ("the jeopardy
element"), (3) that the plaintiff's dismissal was motivated by conduct related
to the public policy ("the causation element"), and (4) that the employer
lacked an overriding legitimate business justification for the dismissal ("the
overriding-justification element").[83]

The first two elements are questions of law; the latter two are questions of fact.[84]

Defendant offers three discrete arguments as to why Plaintiff cannot survive
summary judgement.  The Court resolves them below.

### i.  Jeopardy Element

Relying only on the Ohio appellate decision in *Carpenter v. Bishop Well Servs.
Corp.*,[85] Defendant argues that Plaintiff's claim fails because "[t]he complaints in this matter
were based on alleged OSHA violations."[86]  The *Carpenter* court found that a plaintiff's
claim that relied on ten federal statues (including the OSHA statute) and six Ohio statues
(none of which are among the statutes invoked in this case) did not meet the jeopardy
element on the grounds that the OSHA statute provided for a sufficient remedy.[87]

But the availability of an OSHA claim does not defeat a wrongful-discharge-public-
policy claim.  The *Carpenter* court ignored the Ohio Supreme Court's *Pytlinski v. Brocar
Prod., Inc.*[88] decision.  In *Pytlinski*, the court rejected "any contention [ . . . ] that [plaintiff's]

---

[83] *House v. Iacovelli*, 152 N.E.3d 178, 181 (Ohio 2020) (citations omitted).
[84] *Id.*
[85] 2009-Ohio-6443 (Ohio Ct. App. 2009).
[86] Doc. 15 at 10.
[87]
[88] 760 N.E.2d at 385 (Ohio 2002).

- 13 -

Case No. 21-cv-01978
GWIN, J.

claim fails because his complaints were not filed with OSHA."[89]  The Ohio Supreme Court

recently cited approving to *Pytlinski's* OSHA holding.[90]  And, another Ohio appellate

court[91] and a federal court[92] have found the jeopardy element satisfied in workplace safety

cases where an OSHA claim was available to the plaintiffs.[93]

Finding that Plaintiff's claim is actionable, this Court's inquiry is "whether

termination of employees in circumstances similar to appellants would jeopardize the

public policy."[94]  And here, Ohio Rev. Code §§ 4101.11 & 4101.12 both require

employers to ensure "safe" work environments for workers.  The employment termination

of an employee who raises safety concerns jeopardizes public policy.[95]

### ii.  Causation

Defendant's argument that Plaintiff cannot establish causation warrants little

discussion at summary judgment.  The Ohio Supreme Court has been clear that: "The

causation [ . . . ] element[ is . . . ] to be determined by the finder of fact."[96]

And in any event, the immediate proximity between Plaintiff's safety complaints

during the investigation and the subsequent termination of his employment meets the low

but-for causation standard at this stage.

---

[89] *Pytlinski*, 760 N.E.2d at 388.
[90] *House*, 152 N.E.3d at 183.
[91] *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (Ohio Ct. App. 2014) (jeopardy element met in workplace safety claim brought under Ohio Rev. Code §§ 4101.11 & 4101.12).
[92] *Lightner v. CB&I Constructors, Inc.*, No. 14-cv-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (Marbley, J.).
[93] In addition, because the *Carpenter* plaintiff's claim is different from Plaintiff Merritt's claim, *Carpenter* cannot resolve this case.  In *Carpenter*, the plaintiff cited ten federal statues and six Ohio statutes.  2009-Ohio-6443, ¶ 31.  By contrast, in this case, Plaintiff Merritt relies on two Ohio statues that were not raised in the *Carpenter* case.
[94] *Blackburn*, 22 N.E.3d at 1158.  The Court notes that Defendant did not challenge the clarity element of Plaintiff's claim.  *Cf. Coldly v. Fuyao Glass Am., Inc.*, 2022-Ohio-1960, ¶ 40 (Ohio Ct. App. 2022) ("At present, the conflict in Ohio cases has not been reconciled, nor has a conflict apparently been certified to the Supreme Court of Ohio.").
[95] *Cf. Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 830 (Ohio 2011) (holding that *Pytlinski* plaintiffs must cite "specific statement of law" evincing public policy).
[96] *House*, 152 N.E.3d at 181.

Case No. 21-cv-01978
GWIN, J.

### iii.  NLRA Preemption

Under the Supreme Court's *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*[97] decision, "When an activity is arguably subject to [Section] 7 or [ . . . ] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."[98]

Defendant says that Plaintiff's claim falls under Section 8(a)(1) claim under the NLRA.[99]  That provision incorporates NLRA Section 7, which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to *engage in other concerted activities for the purpose* of [ . . . ] *mutual aid or protection* [ . . . ].[100]

As the Supreme Court has noted, "The term 'concerted activit[y]' is not defined in the [NLRA] but it clearly enough embraces the activities of employees who have joined together in order to achieve common goals."[101]  Under more recent Sixth Circuit precedent: "A single employee's safety complaint [ . . . ] is not per se concerted simply because it is of common concern to the group. [ . . . ].  Instead, 'the relevant question is whether the employee acted with the purpose of furthering group goals.'"[102]

Plaintiff's claim in this case does not amount to NLRA "concerted activities."  While Plaintiff admits that his safety complaints were made on behalf all employees,[103] there is no

---

[97] 359 U.S. 236 (1959).

[98] *Id.* at 245.

[99] Even though Plaintiff is not a union member, NLRA Sections 7 and 8 nonetheless apply here.  *See Vic Tanny Int'l, Inc. v. NLRB*, 622 F.2d 237, 241 (6th Cir. 1980).

[100] 29 U.S.C. § 157 (emphasis added).

[101] *N.L.R.B. v. City Disposal Sys. Inc.*, 465 U.S. 822, 830 (1984).

[102] *N.L.R.B. v. Talsol Corp.*, 155 F.3d 785, 796 (6th Cir. 1998) (citations omitted).

[103] Doc. 17 at 45–46.

Case No. 21-cv-01978
GWIN, J.

record evidence that Plaintiff "acted with the purpose of furthering group goals" under the

above-cited Sixth Circuit precedent.  Defendant offers no evidence that Plaintiff

coordinated his complaints with any co-workers.  Instead, the most relevant complaints

were made in the context of an interview regarding the t-shirt incident.  These comments

were "advancing his individual concerns"[104] and fall outside the scope of the NLRA.

Further, contrary to Defendant's position, the Court finds unpersuasive the decision

in *Andrewsikas v. Supreme Indus., Inc.*[105]  First, that case is factually distinguishable

because, unlike here, that plaintiff and another employee "simultaneously lodged

complaints about workplace safety to management on multiple occasions."[106]  And second,

that district court relied on Second Circuit precedent interpreting "concerted activity" that

is not binding on this Court.[107]

## IV.    Conclusion

The Court **DENIES** Defendant's summary judgment motion.

IT IS SO ORDERED.

Dated: June 28, 2022                                          s/      *James S. Gwin*
                                                             JAMES S. GWIN
                                                             UNITED STATES DISTRICT JUDGE

---

[104] *Talsol Corp.*, 155 F.3d at 797.
[105] No. 19-cv-574, 2021 WL 1090786 (D. Conn. Mar. 22, 2021).
[106] *Id.* at *4.
[107] *See id.* at *3–*5.